government's misuse of summary witness testimony to interject expert opinion in this case. And I'm going to focus on two examples from the trial. That would be the testimony of Agent Johnson and the testimony of Agent Leach. And use those as examples to show you how the government misused that. Because in tax fraud cases, most of what IRS agents testify to is not required to be expert opinion. But occasionally, there is testimony that is. And if we focus on Agent Anna Johnson, she was a very specific type of IRS agent. She ran the frivolous return unit. And at pages 199 to 200, she spelled out what the civil penalties for filing a frivolous tax return is. Now, unlike regular agent testimony, which requires high school math and tax tables, this is a civil imposed statute. They imposed $20,000 for the frivolous filing penalties on Mr. Sorensen based on a statute which requires subjectivity. Counsel, what if these kind of facts, most of them in this testimony, are right on the IRS's website, like that one? How does that affect it? For anybody using the IRS's website and using, gosh, a couple of Google searches could easily find it out. I don't think the average person understands how to find an IRS notice which defines the Federal statute, which then defines, using subjective language, what is a frivolous tax return. Certainly, in the IRS notice, if we understand what that means, is that the IRS says, if you disavow the Constitution and you use that as a principle for your tax return defiance, is that that's a frivolous return. So, but that also requires that agent who assigned the $20,000 worth of penalties to understand what's going on in the case before they do it, understand the intent of the person who's taking that action, to apply even the IRS notice that you can find on a Google search. So I don't say that it's not there, but not everyone who hates the Constitution is going to get a frivolous return. It takes an agent to analyze all of those factors and then tell them to the jurors what they are. And you had, this is a perfect example of her saying at that $199 to $200, well, we assigned these penalties. I'm not telling you how they were done. We just did it. So tucking that into summary testimony to say, well, we did it, and this is a summary of what we did, but finding what those, those things you can find on Google and how they're applied on an agent-by-agent basis in a very specialized frivolous return unit, that's the perfect example of when expert testimony is required. What about the Beckman case? It says if it bases summary of evidence on anything received in the case, as long as it's based on that, the test, and available for cross-examination. Yes. That the testimony may be received. Are you familiar with the Beckman case? I am. You know, Beckman and Ellison and Steierhoff all kind of say the same thing. I think it's Ellison that said very eloquently, is that in this case, we don't need expert testimony because it is simplistic and transparent in what the agent had to do, which is the exact opposite of what you see here, is that you don't have something that's simplistic, because we're talking about the application of subjective principles, things that are not transparent because only IRS agents in this special unit will do that. You know, what's actually a better example is Agent Leach. Agent Leach was talking about cryptocurrency, something that is not simplistic and transparent. We know that because the government made that argument in their sentencing argument, that it is sophisticated means. And, you know, as a pop quiz, do all of us understand what a firm transaction is in a blockchain cryptocurrency exchange unique to the government I trust because each cryptocurrency exchange is different because there's no standardized banking principles? That's what Leach was testifying about. So if we are going to examine the Beckman holding and the Ellison holding, when we're talking about something that is so specific that you should look at pages 409 to 412 of the transcript, where Leach is going into great detail about what is a blockchain, the U.S. attorney was basically asking him to explain to jurors in very basic principles. I think the U.S. attorney says, well, I'm a luddite. Can you explain cryptocurrency exchanges and transactions to the jury? That is someone who requires very unique knowledge. He has 16 years of experience. You want to try the Watkins case on that one? Because it says if it's based on first-hand knowledge and personal experience, especially in a plain error case, that the agent can testify. Perfect. That's exactly the case. But his first-hand experience is, yes, I saw step one, step two, step three, step four. I'm explaining what I did and saw to the jurors. But what the Watkins case says supports my position in that is that this agent is saying, but my 16 years of experience of understanding how cryptocurrency works, because there's no manual for cryptocurrency, right? You can't just get that from Google searches because it's changing constantly. He's an expert in the area of cryptocurrency and he did two things. He used his first-hand knowledge of the investigation, no doubt about it, but he explained that using 16 years of experience, gathering all that knowledge of how these cryptocurrency exchanges worked, and then explaining those piece by piece to the jury so that they can understand, well, here's what the fraud was in this case because of the way that he was hiding the transactions. How much about the details of cryptocurrency did the jury have to understand in order to understand the government's theory? I mean, I think it's in one, there'd be one thing to sort of say generally, what's cryptocurrency? Another is, how does it actually work in detail? How much did the jury need to know for the government's theory? They needed to know a lot, and that's what you can see on page 407, and then 409 to 412, is that to understand that it's just not, actually, the sentencing argument is the best to kind of overlay the answer to your question. The government's saying this was a sophisticated means transaction because he was hiding these transactions in cryptocurrency, and at the end of the government's testimony about cryptocurrency, they were asked, well, how much was left in the account? And the agent said, 29 cents. Well, where did all the money go? You know, the question always in these cases is to follow the money trail. So the agent needed to explain to the jurors where the money went so that the IRS couldn't either levy that for collection or that Mr. Sorenson then hid the gains on that amount and didn't pay tax on them. And so it required those two principles because you've got two ideas in what the cryptocurrency exchanges were that the jurors had to understand. The loss gained to the United States because the tax wasn't paid and the inability to levy those accounts because they're being hidden in the intricacies of the Internet. And I will keep answering questions. I would like a little bit of time for rebuttal, but does that answer your question? Thank you. All right. Unless you have any other direct questions, I'd like to leave the rest for rebuttal. Thank you. Thank you. Mr. Nelson. May it please the Court. Nathan Nelson on behalf of the United States. I'd like to start by talking about the standard of review here, because it's important to note that the Defendant objected only to very specific cases. I'm not going to go into the specifics of the testimony that was offered before the District Court. So while the District Court's overruling of those specific objections should be reviewed for abusive discretion, the vast majority of the testimony is subject to plain error review only. So, for example, with respect to Agent Johnson, this counsel's raising the penalties for frivolous filings. That was not objected to before the District Court, and I'll note it wasn't even cited in the Defendant's brief. The Defendant's brief cited pages 188 to 195, and here are her – Well, he did make objections about Johnson, so what objections did he make? I thought that was under – Absolutely. Abusive discretion counsel. Your Honor, he objected to a specific question from Agent – about – to Agent Johnson about – Agent Johnson was discussing how she – the Defendant didn't file a tax return for tax years 2017 through 2019. She went back, she pulled the income data that had been submitted to the IRS, she applied the standard deduction, she credited in his withholding, and she determined how much he owed for those years he didn't apply a tax return. There was an objection to a question where she was asked about – talking about crediting him with withholding for his tax liability. That was objected to based on expert testimony. Of the Defendant's – the portion cited in the Defendant's brief, all that was objected to with respect to Agent Johnson's testimony. So I think the point here is the fact that he objected to a few specific questions doesn't preserve for appeal this idea that the entire witness should have been struck. I think that is a question that's not before the Court. It's really, did the District Court abuse its discretion in overruling the objection to these specific questions that were lodged? Turning to whether there was expert testimony here, as I said, I don't think the District Court plainly erred, nor did it abuse its discretion in finding that these witnesses were not experts. As Your Honor pointed out, the witnesses can testify to any relevant matter about which they have personal knowledge. And expert witnesses really have three hallmarks that make them different. One, they can testify – they're exempted from that requirement of personal knowledge. They can testify based on hypotheticals or based on hearing testimony in court. That's Rule 602. They can give opinions on matters requiring specialized knowledge. That's Rule 702. And they can base those opinions on otherwise admissible evidence. That's Rule 703. And here, the challenge witnesses really did none of those three things. What about the cryptocurrency? That does seem to be something that is an area that we, I think people generally know what you're talking about. But if you're going to ask the jury to determine exactly how someone used cryptocurrency to execute a fraud in the government's theory, why not just go ahead and qualify that person as an expert, at least for that area, even if they could also be identified as a fact witness based on their investigation? I think there are two points I'll make in response to that, Your Honor. First, I'll note, as I'm sure Your Honor is aware, that was not objected to at the time of trial. Any of the testimony about cryptocurrency was not subject to an objection. Wasn't there a general discussion about expert testimony, though, prior to trial? There was, Your Honor. There was a general discussion about expert testimony. But I'll note under Rule 103b, unless the Court definitively rules on a motion in limine, it doesn't preserve the issue for appeal. So here, the district court was very clear that it couldn't make prejudgments as to what constituted expert testimony and what constituted what did not. In fact, the Court even said, look, multiple times, I have to rule on this as it comes. So object when the testimony is being made. And no objection was lodged with respect to the cryptocurrency. The second thing I'll note about the cryptocurrency is I think Your Honor cut straight to the heart of the matter. It was, while there was testimony about cryptocurrency, I don't think the thrust of that testimony didn't require the jury to understand the intricacies of cryptocurrency. It didn't require them to understand how the blockchain works or what these two different types of cryptocurrency that were used were. The importance of the testimony was merely that he had moved money out of a typical bank account or brokerage account. He moved it into a cryptocurrency exchange. He bought two different kinds of cryptocurrency. And then he put it in a digital wallet where it was outside the reach of the IRS. That was the thrust of the testimony. I don't think it required any particular knowledge or detail about how the cryptocurrency system works. But what about the areas that I think you agree were preserved? And I think our case law, when it's taxes, it's a little different. We treat it a little bit differently. But I guess to repeat my question in this context for sort of the testimony, I think it's of the tax calculations. Why not just qualify her as an expert for that portion and then allow her to testify as a lay witness or fact witness for others? It seems fairly straightforward. I agree with Your Honor to the extent of that I don't think the process for noticing someone as an expert is particularly burdensome on the government, certainly. However, here it just, in the government's view, simply was not necessary. And I think if you look at the substance of Agent Johnson's testimony, that becomes clear. The agent did a couple things. As I mentioned, she pulled from the IRS records what employers and banks had submitted to the IRS as Mr. Sorenson's income. His W-2, his 1099. She took those. As she said, she didn't make any independent judgments about what was taxable. She just pulled the information off the system. She then applied the standard deduction, something that I think every reasonable, intelligent taxpayer is familiar with. She gave him credit for his withholding. Again, another concept that I think the everyday lay juror is familiar with. And then she applied that taxable income to a table. That's a published table to come up with his tax liability. So what about the penalties that were talked about, the exotic penalties? Again, I'll note that I think, you know, with respect to the penalties, that wasn't even briefed by counsel. But I believe that, again, there wasn't the penalties for frivolous filings are what he's talking about here. Mr. Sorenson did things that were patently frivolous. I don't think it requires expert testimony for the jury to understand they're frivolous. He sent a nonsense bond to the IRS, a $500 billion bond, you know, about the equivalent of the budget of the Defense Department. He put money orders, which were handwritten money orders with the Social Security number on them. He refused for cause and sent in handwritten filings in lieu of a tax return. So, again, I don't think there was any need for expert testimony to explain that these met a standard for frivolousness. Also note that wasn't an element of the offenses. Again, these were the agent was explaining how they arrived at certain numbers as to what he owed. But the frivolous nature of these filings wasn't really an element of the defense, nor was it really in dispute at trial. I mean, the defendant's own closing was really about his mental health and his willfulness in committing the offenses. There wasn't really any dispute that he was engaged in frivolous, a frivolous campaign. Well, counsel, the IRS has regulations that have the force and effect of law. They have all sorts of procedures and many other notices you heard us talk about a moment ago. Those are just persuasive, but everybody goes by them. How do we keep their ever having to be an expert in this case, that the information is so out there and so available that anybody spends two or three days on the Internet, that there never be an expert in any of these cases and they could really go into some great details about how the IRS works and doesn't work? I think Your Honor is raising essentially the line drawing problem. The government is, will concede easily that certainly there are some, maybe many tax concepts that, for which an expert testimony would be advisable, if not required. There are plenty of complex tax concepts that might be the subject of a criminal proceeding. I mean, but I think we need to distinguish those hypotheticals from what happened in this case. This is not a case where we're dealing with, for example, cross-jurisdictional tax issues. We're not talking about net operating laws, carry-forwards or carry-backs. We're not talking about assessing the value of a unique piece of property. We're talking about taking wages, applying a standard deduction, and applying that to a table, which is something every reasonably intelligent person can do.  I see my time's up. May I respond to Your Honor's question? Yeah, you should. Thank you, Your Honor. Again, I'll note that I think the, this, what made this a sophisticated means, there's a difference between what's necessary to explain to the jury that sophisticated means were used and going into detail about how those sophisticated means operated. The jury was able to understand what it meant to create a false or shell company that did no work. No. But they didn't need Different triers of fact. Exactly. So I don't think they needed the expert testimony to explain exactly the mechanics of that. They just needed to understand that these devices were used in reaching a sophisticated means. Thank you for your argument today. Thank you, Your Honors. Mr. Kloeser. Thank you. I can squeeze in three points. First, the pretrial arguments in this case at pages 29 to 30 in the transcript, counsel for the government said that, and they cited Ellison during those arguments to say, we're not making expert testimony in the sense of determining how a particular tax line exemption or something else would apply. We're just applying tax tables. And they went far beyond that when they were explaining to the judge pretrial, like, well, here's the scope of why we don't need to qualify these folks as experts, even though I was begging them to do it before the trial. Point number two, statutory basis of frivolous filing is in IRS Tax Notice 1033, which is 17 pages long, to explain what 26 U.S.C. 6702 is the standard for filing frivolous tax returns. The reason I raise that is because during trial, the government used frivolous to equate to fraud. That's the main means that they said to the jury without saying he's committing fraud. He's saying it's frivolous this way, this way, and this way. And they use those examples from Agent Johnson, for example, to say the fraud was here because, for example, the IRS thought there was fraud. They assigned $20,000 worth of fraud, quote, unquote, I shouldn't say that, fraud, frivolous penalties. And you should equate that to these experts saying that there's fraud that occurred here. And then, finally, is to go back to the Agent Leach, is that there was no objection for that, but certainly this was outside the scope of what the government was talking about at the beginning of the trial when Mr. Sorensen, with my advice, was saying object on these grounds. You know, I had weeks to work this trial up. It was only a couple of weeks, and I had to be not trial counsel at that moment. And so these were problems that we saw coming and actually warned the government about saying why don't you just file Rule 16 disclosures, like you're asking. It's not that hard. So I think if there's any message that this bench can send, other than sending this case back to trial, is to tell the government you have a responsibility to declare expert witnesses even if you're going to use summary testimony, because not everything in a summary is just a summary. Sometimes it's expert testimony. Thank you. Counsel, thank you both for the argument. Case number 24-3043 is submitted for decision by the Court. Ms. O'Keefe. The next case for argument 24-1375, Monica Perkins v. City of Des Moines et al. Thank you.